UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PAMELA JOY,**

        Plaintiff,

v.

**DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,**

        Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*
_____/

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **PAMELA JOY**, for her Complaint against Detroit Public Schools Community District, stating the following:

### INTRODUCTION

1. Plaintiff Pamela Joy was a long-time employee and Director of Nursing for Defendant Detroit Public Schools/Detroit Public Schools Community District until

she was forced to resign following the Defendant's refusal to provide a reasonable accommodation or even engage in the required interactive process to identify an appropriate accommodation. As a result of Defendant's inaction, Plaintiff lost her career and caused her significant professional humiliation and embarrassment.

. Within this Complaint, Plaintiff alleges that she was discriminated against due to her disability and Defendant failed to provide her with a reasonable accommodation forcing constructive discharge in violation of her rights under the Americans with Disabilities Act, 42 USC § 12101, et seq (hereafter the "ADA"), Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, and Michigan's Persons with Disabilities Civil Rights Act 220 OF 1976, MCL 37.1602, *et seq.*

## **PARTIES**

2. Plaintiff Pamela Joy is an individual who resides in the City of Detroit, Wayne County, Michigan.

3. Defendant Detroit Public Schools Community District is a municipal organization located in Detroit, Michigan, Wayne County.

4. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICITON AND VENUE

5. The jurisdiction of this Court over this controversy is based on 28 U.S.C. § 1331, to enforce the provisions of the Americans with Disabilities Act, 42 USC § 12101, *et seq* (hereafter the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*

6. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as the Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

9. Plaintiff Pamela Joy began her employment with Defendant Detroit Public Schools ("DPS"), now the "Detroit Public Schools Community District" ("Defendant" or "DPSCD"), in 2002.

10. In August 2010, Plaintiff was involved in a catastrophic automobile accident which left her physically handicapped.

11. Throughout Plaintiff's employment with DPS/DPCD, approximately seventeen years, she never received any significant discipline or negative performance reviews.

12. Additionally, Plaintiff was promoted to Director of Nursing. In this role, Plaintiff's responsibilities included the oversight of health services to students across the district. Notably, her position involved no direct provision of care.

13. In February 2019, Plaintiff learned that she required surgery. Additionally, that the surgery would involve a substantial recovery time. Plaintiff consulted with DPSCD outreach nurses to explore options to minimize the impact on the delivery of healthcare services to the students. It was agreed that Plaintiff would schedule her surgery for the end of the school year to allow Plaintiff to have the summer to recuperate to return for the 2019-2020 school year.

14. On or around March 19, 2019, Plaintiff submitted her notification for leave under the Family Medical Leave Act ("FMLA") with a physicians note to be off work from April 19, 2019, until July 19, 2019.

15. Plaintiff was granted protected leave under the Family Medical Leave Act and the surgery was performed as scheduled .

16. On or around June 17, 2019, Plaintiff received a telephone call from DPSCD Leave Manager Sharon Sklar ("Sklar") informing Plaintiff that Plaintiff's contract was renewed for the 2019-2020 school year. During the call, Sklar notified Plaintiff that her FMLA actually expires on July 11, 2019 and she was expected to return the following day on July 12, 2019. Plaintiff informed Sklar that she was still recovering

and that her post op appointment was scheduled for July 16, 2019. During the call, Plaintiff verbally requested an accommodation of a short extension of leave without pay.

17. Notably, DPSCD frequently provides extensions of leave beyond the allotted FMLA period for serious injuries and illnesses.

18. Furthermore, Plaintiff's request could easily be accommodated as significantly fewer buildings remained open for summer school, the period she was to set to return, and all of the staffing for these schools was completed *prior* to Plaintiff taking her FMLA leave.

19. DPSCD' 2018-2019 school year ended on June 21, 2019.

20. On July 3, 2019, at around 9:14 a.m., Plaintiff submitted a request for an accommodation of a short extension of her medical leave along with the related doctor's note.

21. On July 3, 2019, at around 5:31 p.m., Sklar rejected Plaintiff's request without explanation as to why the request could not be reasonably accommodated.

22. Plaintiff emailed Sklar again on July 3, 2019, requesting *any* options to extend her leave.

23. On July 8, 2019, Sklar responded again stating, without explanation, that there is no leave time in addition to the FMLA standard 12 weeks.

24. On July 10, 2019, Plaintiff submitted a written request for any accommodation that could be considered based on her physician's documentation that she is unable to return to work. *(Exhibit A)*

25. On July, 12, Sklar responded that "FMLA guides all leaves/leave types. I have no other options to offer you." *(Exhibit A)*

26. On July 13, 2019, Plaintiff sent an email inquiring as to the status of her request for accommodation and employment as she has not been medically cleared to return to in person work.

27. On July 16, 2019, Plaintiff emailed a third request for a reasonable extension of her leave by email. *(Exhibit B)*

28. On or about July 17, 2019, Plaintiff received a denial notification.

29. On July 18, 2019, Plaintiff received her signed contract for the 2019-2020 school year.

30. Later, on July 18, 2019, Plaintiff received a notice of unauthorized absence and separation paperwork.

31. On July 21, 2019, Plaintiff submitted an ADA request for accommodation due to her difficulties walking and standing along with the related documents from her physician. *(Exhibit C; Exhibit D)*

32. On July 22, 2019, Plaintiff received an email that her request for an FMLA extension was denied and that she either needed to return or resign by July 25, 2019.

*(Exhibit E)* Plaintiff responded that she was no longer seeking an extension under the FMLA but instead a request for an accommodation under the ADA. *(Exhibit E)*

33. At no point did DPS or any of its agents ever engage with Plaintiff in the ADA's interactive process to determine whether or not her request could be reasonably accommodated or any potential alternatives.

34. Having no other option, Plaintiff retired from her employment on July 23, 2019.

35. On August 28, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that DPSCD discriminated against her to a disability or perceived disability, failed to engage in the interactive process, and refused to provide her a reasonable accommodation.

36. On August 29, 2019, DPSCD posted Plaintiff's former director of nursing position. Notably, this job posting first appeared *after* the period for which Plaintiff sought the accommodation to remain on leave or telecommute would have expired.

37. On information and belief, Plaintiff's position was not filled until nearly a year later in June 2020.

38. On November 1, 2019, DPSCD submitted its position statement to the EEOC incorrectly alleging that Plaintiff never actually submitted a request for a reasonable accommodation.

39. In February 2021, the EEOC issued a determination in favor of Plaintiff finding that DPSCD violated the ADA when it willfully ignored Plaintiff's request for a reasonable accommodation. As a result, the matter was sent over to the Department of Justice ("DOJ").

40. On December 15, 2021, Plaintiff was issued a right to sue letter to bring the present lawsuit. *(Exhibit F)*

## COUNT I
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE – AMERICANS WITH DISABILITY ACT, 42 U.S.C. §§12101 *et. seq.*

41. All preceding paragraphs are incorporated by reference.

42. At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Americans with Disability Act, 42 U.S.C. §§12101 *et. seq.* ("ADA").

43. Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

44. Plaintiff's disability affected her ability to engage in one or more major life activities.

45. Plaintiff was/is qualified for her former position as Director of Nursing.

46. Plaintiff submitted requests for a reasonable accommodation to Defendant.

47. Plaintiff submitted adequate notice of a request for accommodation to trigger Defendant's obligation to engage in the ADA's interactive process to provide a reasonable accommodation.

48. The accommodation(s) sought by the Plaintiff were reasonable as they have previously been provided to other employees.

49. Defendant has a policy of allowing employees who have suffered a catastrophic illness up to a full year off work before termination. However, this benefit was denied to Plaintiff without explanation.

50. The accommodation(s) sought by the Plaintiff were reasonable as they would not have caused Defendant undue hardship.

51. The Defendant was under a legal duty to provide Plaintiff with reasonable accommodation for her disability, and to not discriminate against her on the basis of her disability.

52. Defendant rejected Plaintiff's requested accommodation and failed to engage in the interactive process without justification.

53. Defendant discriminated against the Plaintiff when it failed to engage in the ADA's interactive process to provide a reasonable accommodation.

54. Defendant's failure to engage in the interactive process prevented the identification of an appropriate accommodation for Plaintiff, a qualified individual.

55. Defendant's violations of the ADA have been done with malice and/or reckless indifference to the Plaintiff's rights, thereby subjecting the Defendant to exemplary damages, in addition to all other damages available at law.

56. As a result of Defendant's ADA violation, Plaintiff was faced with the decision to either retire or be terminated. For this reason, Plaintiff was forced to retire despite planning for to continue working for years to come.

57. Plaintiff has received her right to sue under the ADA and her claim is timely. *(Exhibit F)*

58. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT II
## DISABILITY DISCRIMINATION – AMERICANS WITH DISABILITY ACT, 42 U.S.C. §§12101 *et. seq.*

59. All preceding paragraphs are incorporated by reference.

60. Defendant discriminated against Plaintiff by constructively discharging her because of her disability in violation of her rights pursuant to the ADA.

61. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE IN VIOLATION OF §§ 501 AND 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 *et. seq.*

62. Plaintiff incorporates all of the foregoing paragraphs as if fully restated herein.

63. Defendant Detroit Public Schools Community District accepts federal funding.

64. At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Rehabilitation Act.

65. Plaintiff qualifies as a handicap person under the Rehabilitation Act.

66. Plaintiff is and/or is perceived disabled within the meaning of the Americans with Disabilities Act which standards are used for Rehabilitation Act claims.

67. Defendant was aware of this condition through Plaintiff's previous medical notifications, use of FMLA, and previous conversations.

68. Plaintiff sought a reasonable accommodation from Defendant relating to her limitations walking and standing.

69. Defendant failed to engage in the interactive process relating to Plaintiff's requested accommodation.

70. Defendant could have reasonably accommodated Plaintiff's medical restrictions.

71. At all times relevant to this complaint, Plaintiff was qualified for her position with Defendant.

72. Defendant's failure to provide Plaintiff with a reasonable accommodation and engage in the interactive process constitutes disability discrimination in violation of §§ 501 and 504 of the Rehabilitation Act, as amended (29 U.S.C. §§ 791 and 794).

73. Pursuant to § 501 of the Rehabilitation Act (29 U.S.C. § 791), Defendant operates under an obligation to find reasonable ways to accommodate an employee so that he or she can become a productive member of the workforce, including the obligation to look for new or innovative ways to alter, restructure, or change the ways of doing a job in order to allow a qualified person with a disability to perform the essential functions of a particular job.

74. Pursuant to § 504 of the Rehabilitation Act (29 U.S.C. § 794), no otherwise qualified handicapped individual shall, by reason of his or her handicap, be denied the

benefit of or subjected to discrimination under by any entity which receives federal funding.

75. Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

76. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IV
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

77. All preceding paragraphs are incorporated by reference.

78. Plaintiff is a person with a disability within the meaning of MCL § 37.1103(g) whose disability qualifies as such under MCL § 37.1103(d).

79. Defendant is an employer of the Plaintiff within the meaning of MCL § 37.1201(b).

80. Defendant is/was under a legal duty to provide Plaintiff with reasonable accommodation for her disability, and to not discriminate against her on the basis of her disability.

81. Plaintiff submitted a written request for a reasonable accommodation.

82. Notwithstanding the Defendant's legal duties, it has nonetheless violated those duties, and thus violated the PWDCRA, by failing to afford plaintiff reasonable accommodations necessary to continue working or even engage in the interactive process to determine potential alternative accommodations.

83. Defendant's violations of the PWDCRA have been done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendant to exemplary damages, in addition to all other damages available at law.

84. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### COUNT V
### DISABILITY DISCRIMINATION/CONSTRUCTIVE DISCHARGE – MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

85. All preceding paragraphs are incorporated by reference.

86. Defendant discriminated against Plaintiff by constructively discharging her because of her disability in violation of her rights pursuant to the PWDCRA.

87. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of the ADA, the Rehabilitation Act, and the PWDCRA;

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff exemplary damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff reasonable attorney fees, costs and interest; and

h. Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC

                PO Box 44855  
                Detroit, MI 48244  
                (313) 246-3590  
                jackwschulz@gmail.com  
                *Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PAMELA JOY,**

        Plaintiff,

v.

**DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT,**

        Defendant.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*
_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Pamela Joy hereby demands for a trial by jury.

        Respectfully submitted,

        By: /s/ Jack W. Schulz
        Jack W. Schulz (P78078)
        SCHULZ LAW PLC
        PO Box 44855
        Detroit, MI 48244
        (313) 246-3590
        jackwschulz@gmail.com
        *Attorney for Plaintiff*